IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ECHO MONTGOMERY, | * | |
| | * | |
| Plaintiff, | * | Case No. 15-263 |
| | * | |
| vs. | * | |
| | * | |
| NATIONSTAR MORTGAGE, LLC; | * | JURY TRIAL REQUESTED |
| | * | |
| Defendant. | * | |

## COMPLAINT

**NOW COMES** Plaintiff Echo Montgomery and as her Complaint against the above-named Defendant avers as follows:

### PRELIMINARY STATEMENT

This action arises from the Defendant's acts and omissions regard the Plaintiff's home mortgage loan. At all relevant times, Defendant was the servicer of the loan and the mortgage, by assignment. Defendant has failed to recognize and comply with a binding modification agreement offered to and accepted by Plaintiff. Defendant has also misapplied Plaintiff's mortgage payments, falsely demanded sums not owed and wrongfully instituted foreclosure. Defendant has also breached a Trial Period Plan Agreement. Plaintiff seeks damages and attorneys fees for multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA"). Plaintiff also seeks damages for breach of the mortgage and note.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 15 U.S.C. 1692k.

2. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## PARTIES

3. Plaintiff is an adult resident of Mobile County, Alabama.

4. Defendant Nationstar Mortgage, LLC ("Nationstar") is a corporation formed in the State of Delaware, with its principal place of business in Texas.

## FACTS

5. On December 12, 2008 Plaintiff purchased her home at 917 West Golf Terra Drive in Mobile. Upon the purchase, she entered into a loan agreement with Walker Jackson Mortgage Corporation in the amount of $77,489.00. Annual percentage rate for the loan was 7 percent, with a 30 year term. The monthly principal and interest payments were $515.00.

6. After the closing, Walker Jackson Mortgage Company assigned loan to Countrywide Bank, SB, which then assigned the loan to Bank of America, N.A. ("BOA"). Loan was serviced by BOA until the loan was transferred to Nationstar on or about January 15, 2013. At the time the servicing of the loan was transferred to Nationstar, the loan was considered by the lender to be in default.

7. In May 2012, Plaintiff lost her job temporarily and fell behind on her mortgage. She was accepted into Hardest Hit Alabama, a federally funded program which grants temporary mortgage assistance to individuals impacted by the financial downturn. Throughout this period, Plaintiff was in contact with Nationstar and discussed her options. By the time the Hardest Hit assistance expired, Plaintiff's financial picture had improved, but she still struggled to pay her mortgage. Working through Consumer Credit Counseling Service, Plaintiff applied for a

modification through Nationstar under the federal Homes Affordable Mortgage Program ("HAMP").

8.  HAMP was launched in the wake of the mortgage crisis and bank bail-outs. The program facilitates modifications of at-risk mortgages and provides tax-payer funded incentives to mortgage servicers to encourage them to modify mortgages to make them more affordable.

9.  Once a borrower is approved, HAMP involves two basic steps to modification. Step one is a Trial Period Plan ("TPP"), under which the borrower must make three monthly payments in the amount estimated to be close to what the payments will be under a permanent modification. If the borrower timely makes the TPP payments, a permanent modification is extended. This is step two of the program.

10. In November 2013 Plaintiff submitted the information and documents required by Nationstar for consideration of a HAMP modification. Plaintiff was told that her request for a modification would be reviewed.

11. On February 3, 2014, Nationstar notified Plaintiff that she was approved for a modification under HAMP. Nationstar provided Plaintiff a "HAMP Trial Period Agreement" ("TPP Agreement") which required three consecutive payments, beginning March 1, 2014, in the amount of $506.94. Plaintiff signed the TPP Agreement and timely returned it to Nationstar as instructed. Plaintiff then made each of the required trial plan payments.

12. On or about May 7, 2014, Nationstar mailed Plaintiff final loan modification papers, along with a cover letter. The cover letter stated as follows:

> **Congratulations!**
>
> Your final modification documents are enclosed. You are almost to the finish line! The last and final step of your modification process is to complete the signing of your modification documents.

-3-

> **Important:**
>
> Your modification documents **MUST** be executed with a notary. Feel fee to use a Public Notary of your choice. Alternatively (of if you do not have access to a notary), please review the information below for services offered by Solutionstar Settlement Services.

13. The documents provided with the modification package included a "Loan Modification Agreement," "Subordinate Mortgage" and "Subordinate Note." Plaintiff signed each of those documents before a notary as instructed by Nationstar and as required by Alabama law, and she timely returned those documents to Nationstar.

14. Under the modification agreement accepted by Plaintiff, the interest rate was reduced to 4.625% lowering the principal and interest payments to $241.93. The modified monthly payment, including escrow items, was $505.39. This was over $200 less than the total monthly payment prior to the modification.

15. The first payment under the modification was due July 1, 2014. Plaintiff made that payment and continued making timely payments in the amount required under the mortgage, as modified. The first three payments were accepted and retained by Nationstar.

16. By letter dated September 15, 2014, Nationstar notified Ms Montgomery (falsely) that she had was 10 months behind on her mortgage. The letter stated as follows:

> You have not made payments on your loan since 12/01/2013. You are now due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan.
>
> As of the date of this letter, total monthly payments (including principal, interest, and escrow, if applicable), late fees, NSF fees, and other fees and advances due under the terms of the loan documents are past due in the amount of **$9,694.81**. In order to cure this default, you must pay the total amount due of **$9,694.81** in addition to other amounts that become due from the date of this letter through the date you pay.

\* \* \*

> **$9,694.81** must be paid by **10/20/2014** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default.
>
>                                 \*    \*    \*
>
> Failure to pay **$9,694.81** by **10/20/2014** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property.

17. The statements in the letter that no payments had been made since December 2012 and that the nearly $10,000 in arrearage owed were false. Moreover, Nationstar knew these statements were false when it wrote the letter. In fact, Nationstar's own records showed that the mortgage was modified effective July 1st and that Montgomery timely made the payments due since the modification.

18. Shortly after the September 15th letter, Nationstar began rejecting Plaintiff's payments and put her loan in foreclosure.

19. Nationstar has also reported false information to credit bureaus regarding Plaintiff's mortgage, including that she has missed payments which she made. Nationstar's reporting also failed to recognize the modification.

20. On November 12, 2014 Nationstar began publishing a foreclosure notice for a foreclosure sale on December 8, 2014.

21. On December 6, 2014, Plaintiff was forced to file Chapter 13 bankruptcy proceeding in order to prevent Nationstar from foreclosing on her home.

22. Upon information and belief, Nationstar received incentive payments from the Federal government in connection with the TPP Agreement and/or modification agreement offered to Plaintiff.

## COUNT I
## (BREACH OF MORTGAGE AGREEMENT AND NOTE)

23. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

24. The acts and omissions made by Nationstar in connection with management of the Plaintiff's mortgage, the attempted collection of sums not owed, the rejection of payments tendered, the acceleration of the debt and the commencement of foreclosure proceedings all constitute a breach of the Plaintiff's mortgage agreement, as modified, as well as the note.

25. The acts and omissions made by Nationstar breached the mortgage and note in at least the following ways:

   a. Nationstar failed to recognize binding modification agreement accepted by Plaintiff;

   b. Nationstar failed to accept and apply payments under the mortgage and note as modified;

   c. Nationstar failed to provide a meaningful opportunity to cure any default and avoid foreclosure, as required under the mortgage, by failing to provide an accurate statement of the amount necessary to cure; and

   d. Nationstar instituted foreclosure and accelerated the loan balance in the absence of any default under the mortgage and note, as modified;

   e. Nationstar breached the covenant of faith and fair dealing which accompanies the express obligations assumed by Nationstar under the mortgage.

26. Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment against Nationstar for breach of the mortgage and award her compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT II
## (BREACH OF TRIAL PERIOD PLAN AGREEMENT)

27. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

28. The February 4, 2014 TPP Agreement by Defendant and signed by Plaintiff constitutes a written enforceable agreement, binding on Plaintiff and Defendant.

29. The Plaintiff has complied with the terms of the TPP Agreement.

30. Defendant is in breach of the TPP Agreement and Plaintiff has suffered damage as a proximate result of Defendant's breach. The acts of omissions of Defendant which constitute a breach of the agreement by failing to accept payments tendered under the agreement and failing to recognize the final modification which it was obligated under the TPP agreement to implement.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Nationstar for breach of the TPP agreement and award her compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT III
## (FDCPA VIOLATIONS)

31. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

32. This is a claim against Defendant for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA").

33.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Nationstar has attempted to collect a debt which is owed to another and/or it obtained the debt and servicing rights after default.

34.  The alleged debt which attempted to collect from Plaintiff is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

35.  Defendant has violated the FDCPA in connection with its collection attempts against Plaintiff. Defendant's violations include, but are not limited to, the following:

   a. Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1);

   b. Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e;

   c. Communicating to any person, including credit bureaus, credit information which is known or which should be known to be false in violation of 15 U.S.C. § 1692e(8); and

   d. Taking or threatening to take nonjudicial foreclosure action in the absence of a legal right to do so in violation of 15 U.S.C.A. § 1692f(6).

36.  The actions taken by Defendant in violation of the FDCPA occurred within one year of the filing prior to this action.

37.  As a proximate result of Defendant's FDCPA violations, Plaintiff has suffered actual damages.

38.  As a result of its violations of the FDCPA, Defendant is liable to Plaintiff for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

   a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. 1692k;

c. Costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k;

d. Such other and further relief as this Court deems just and proper, the premises considered.

_____
**KENNETH J. RIEMER** (RIEMK8712)
Underwood & Riemer, P.C.
Attorney for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Nationstar Mortgage, LLC
c/o CSC Lawyers Incorporation SVC Inc
150 South Perry Street
Montgomery, Alabama  36104